IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NIDIA HESTON *as next friend and mother to* *A.H., a minor child*, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:21-CV-35-RP |
| AUSTIN INDEPENDENT SCHOOL DISTRICT and JENNIFER HARDISON, | § § § § | |
| Defendants. | § § | |

## **ORDER**

Before the Court is Defendant Austin Independent School District's ("AISD") motion to dismiss, (Dkt. 5); Plaintiff Nadia Heston's ("Heston") response, (Dkt. 10); AISD's reply, (Dkt. 11); Heston's surreply, (Dkt. 12); Heston's advisory to the Court, (Dkt. 23); and AISD's response to Heston's advisory, (Dkt. 24). Having considered the parties' briefs, the record, and the relevant law, the Court issues the following order.

### **I. BACKGROUND**

### **A. Factual background**

This case is about former AISD student A.H., a student with disabilities, and his experience attending public school through AISD. In the complaint, Heston, A.H.'s mother and next friend, makes the following allegations: A.H. was born in 2002 and has Autism, Attention Deficit Hyperactivity Disorder, other emotional disorders, and has also been identified as having Bipolar Disorder. (Compl., Dkt. 1, at 3). As A.H. was a student at an AISD school, AISD was required to hire qualified staff to serve his individualized needs. (*Id.*). As a student with significant disabilities, A.H. began receiving reasonable accommodations in school early in his educational experience. (*Id.*

at 5). One accommodation A.H. received was the assistance of a paraprofessional who had specialized training on how to serve a child with a disability. (*Id.*).

However, Heston had concerns that the school staff was not keeping her son safe, especially given her son's suicidal ideations. (*Id.* at 5–7). Heston expressed her concerns to AISD staff members to no avail. (*Id.*). Eventually, Heston called meetings with school administrators to discuss Defendant Jennifer Hardison ("Hardison"), who had been working with A.H., and asked that Hardison be removed from her position. (*Id.* at 7). The school did not remove Hardison and in March 2016, Hardison verbally harassed A.H. and got so upset that she threw a trash can at A.H., which hit him in the mouth and face. (*Id.*). A.H. suffered an indent on his cheekbone, a bleeding gash on his lip, a chipped tooth, and a broken top permanent retainer. (*Id.*). Heston was later told that A.H. would eventually need jaw surgery or a root canal to fix the broken tooth, and in the days following the incident A.H. suffered numerous symptoms, including not being able to keep his eyes open, nausea, and a fever, all indicating a possible concussion. (*Id.* at 8). A.H. began to withdraw from people, lose weight, remain enclosed in his room, and cover his chipped tooth when he smiled. (*Id.* at 8–9). He was also evaluated for trauma. (*Id.*).

### B. Procedural background

As a result of this incident, Heston filed the present complaint against AISD and Hardison. (*Id.*). In it, Heston asserts multiple claims, including claims under 42 U.S.C. § 1983; § 504 of the Rehabilitation Act of 1973 (specifically, a "failure to keep safe claim"); and the Americans with Disabilities Act (specifically, a "failure to accommodate claim"). (*See generally id.*). However, the procedural history of these claims is somewhat complex. Prior to filing the present case, Heston . . .

> . . . requested a Due Process Hearing with the Texas Education Agency (TEA) in August 2016. In addition to claims under the [Individuals with Disabilities Act ("IDEA")], the Hestons filed an amended complaint adding violations of the Americans with Disabilities Act (ADA) and § 504 of the Rehabilitation Act, asking that "the Hearing Officer hear the intertwined claims pursuant to Section 504 and the Americans with Disabilities Act along with the IDEA." AISD argued that the

> TEA Hearing Officer lacked jurisdiction over the ADA and § 504 claims. The Hearing Officer agreed and dismissed those claims.
>
> While the TEA process was pending, the Hestons and AISD reached a settlement agreement. AISD agreed to pay up to $50,000 for A.H. to attend a private school of the Hestons' choice. In exchange, the Hestons agreed to release all claims against AISD "related to the appropriateness of educational services and resources"—including all IDEA claims—while reserving their rights to file additional "claims pursuant to 42 U.S.C. Section 1983, Section 504 of the 1973 Rehabilitation Act …, and the Americans with Disabilities Act."

*Heston, Next Friend of A.H v. Austin Indep. Sch. Dist.*, 816 F. App'x 977, 979–80 (5th Cir. 2020).

Heston subsequently filed a lawsuit in this Court on January 9, 2018, based primarily on the same set of facts alleged in the current complaint. *See generally* Complaint, *Heston v. Bd. Of Austin Indep. Sch. Dist.*, No. 1:18-CV-18-RP (W.D. Tex. Jan. 9, 2018), ECF No. 1 (hereinafter, "2018 Complaint"). As the Fifth Circuit summarizes:

> Plaintiffs subsequently filed suit in federal court, bringing ADA and § 504 violations alongside constitutional claims under § 1983. AISD moved to dismiss under Rule 12(b)(6), arguing that all the claims had to do with the provision of educational services and were therefore barred for failure to exhaust. The district court found that the claims were, at core, disputes related to A.H.'s educational needs and thus subject to the IDEA's exhaustion requirement. It dismissed the claims without prejudice.

*Heston*, 816 F. App'x at 980. Heston then appealed to the Fifth Circuit who issued their opinion affirming this Court's 2018 order dismissing Heston's claims in a decision on June 9, 2020. *See generally id.*

Heston now files the present complaint, alleging that the present claims are unrelated to her original IDEA claims and thus the requirement that she exhaust her administrative remedies no longer applies.[1] (Dkt. 10, at 1–2). AISD avers that Heston's new complaint merely restates the same

---

[1] The Court notes, however, that in her complaint, Heston also appears to argue that she *has* exhausted her administrative remedies, as she returned to the TEA to seek a final determination on her claims following the dismissal of her previous lawsuit. (Compl., Dkt. 1, at 10). Upon returning to the TEA, AISD "argued the remaining claims left for exhaustion were outside the one-year statute of limitations period set forth in Texas for claims related to the IDEA" and "[o]n December 3, 2020 the Hearing Officer agreed and dismissed the cause." (*Id.*). Heston asserts that, "[n]ow having gone through the exhaustion process, Plaintiffs file the

3

claims that this Court dismissed in 2018 and that this Court must again dismiss the lawsuit as Heston has not cured her failure to exhaust administrative remedies. (*See generally* Dkt. 5).

## II. LEGAL STANDARD

As this Court stated in its prior order dismissing Heston's claims, "[t]he IDEA requires plaintiffs to exhaust a state administrative process before filing an action in federal court." 20 U.S.C.A. § 1415(b), (f), (g); *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 749 (2017). IDEA exhaustion can also apply to ADA other related claims: a plaintiff must exhaust the IDEA's procedures "before filing an action under the ADA, the Rehabilitation Act, or similar laws when (but only when) her suit 'seek[s] relief that is also available' under the IDEA." *Fry*, 137 S. Ct. at 752 (quoting 20 U.S.C. § 1415(*l*))." Order on Motion to Dismiss, at 2–3, *Heston v. Bd. Of Austin Ind. Sch. Dist.*, No. 1:18-CV-18-RP (W.D. Tex. Jan. 9, 2018), ECF No. 42 (hereinafter, "2018 Order"). In that order, this Court noted a dispute among the parties and within the case law as to whether the IDEA's exhaustion requirement is jurisdictional—which would require the Court to evaluate the merits of the motion to dismiss under Rule 12(b)(1)—or if the exhaustion requirement is not jurisdictional, permitting the Court to address the claims under the framework of Rule 12(b)(6). (*Id.* at 3). For the reasons stated in this Court's 2018 order, (*Id.* at 3–6), the Court will consider AISD's motion to dismiss under Rule 12(b)(6).[2]

---

remaining claims, expressed herein." (*Id.*). The Court also notes, however, Heston's seemingly contradictory statement in her response to AISD's motion to dismiss, where she states, "A.H. agrees he has failed to exhaust any FAPE based claims whether under the IDEA or Section 504." (Dkt. 10, at 7). In order to avoid any confusion, the Court will analyze both of the arguments Heston appears to assert: (1) that her present claims are unrelated to her earlier IDEA claims and thus not subject to administrative exhaustion, and (2) that, alternatively, she has complied with the administrative exhaustion requirement and the Court may now assess her claims on the merits.

[2] Since the Court issued the 2018 order, the Fifth Circuit has again stated that "[t]his circuit has not yet determined whether exhaustion under the IDEA is a jurisdictional requirement." *T. B. by & through Bell v. Nw. Indep. Sch. Dist.*, 980 F.3d 1047, 1051 (5th Cir. 2020). Citing the lack of clarity in the case law on this issue, AISD filed their motion to dismiss under both Rule 12(b)(1) and 12(b)(6). (Dkt. 5, at 7 n.9). As the Court has decided to evaluate Heston's claims under Rule 12(b)(6), it will deny AISD's Rule 12(b)(1) motion.

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205 (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief— including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted).

### III. DISCUSSION

#### A. Proper plaintiff

As a threshold matter, AISD asserts that because A.H. was born in 2002, A.H. is now over 18 years old and is therefore considered above the age of majority in Texas, meaning that he may no longer have a next friend acting in a representative capacity in this lawsuit. (Dkt. 5, at 7–8). Heston

5

agrees and notes that this standing issue could be easily cured by A.H. completing a power of attorney, which he would do "herewith." (Dkt. 10, at 20). The Court has not received any indication that A.H. has completed a power of attorney but notes AISD's reply in which the district argues that a power of attorney would not remedy the standing issue. (Dkt. 11, at 6). However, AISD also states:

> Federal Rule of Civil Procedure 17(a)(3) states that the court "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Therefore, procedurally, *if the case is not dismissed* this Court should provide A.H. a specific date to declare if he will be substituted into this action or else explain why his claim should not be dismissed.

(*Id.*) (emphasis added). Given AISD's request that the Court resolve the motion to dismiss before addressing the standing issue, and Heston's lack of objection, the Court will proceed with its order on the motion to dismiss.

### B. AISD's motion to dismiss

AISD argues Heston's claims should be dismissed because Heston still has not exhausted her administrative remedies and has filed substantially the same claims again. (Dkt. 5, at 5). In so doing, AISD asserts, Heston asks this Court to engage in another analysis of whether Heston has successfully exhausted her administrative remedies, an analysis which is barred by issue preclusion. (*Id.*). Heston disagrees, arguing that this Court's 2018 order dismissing her claims was based on the Court's conclusion that her § 1983, § 504, and ADA claims "concerned the denial of a [A.H.'s Free Appropriate Public Education ("FAPE")]" claims under the IDEA, but that the present complaint asserts § 1983, § 504, and ADA with no relation to A.H.'s FAPE claim. (Dkt. 10, at 1–2). Therefore, Heston argues, the Court need no longer consider whether Heston has exhausted her administrative remedies and may review the claims on § 1983, § 504, and ADA on their own merits without reference to the IDEA. (*Id.*).

1.  Issue preclusion

The first question the Court will address is whether Heston's present complaint is barred by issue preclusion. Issue preclusion applies when: (1) the issue at stake in the present claim is identical to the one involved in a prior proceeding; (2) the issue was actually litigated in the prior proceeding; and (3) the determination of this issue was necessary to the decision. *Bradberry v. Jefferson Cty., Tex.*, 732 F.3d 540, 550 (5th Cir. 2013). AISD argues that the Court has already considered whether these same claims required exhaustion of administrative remedies, and that the determination of this issue was essential to this Court's 2018 order and the Fifth Circuit's subsequent affirmance. (Dkt. 11, at 1–2). To make this determination, the Court must first decide whether the claims Heston asserts in the present complaint are the same as those asserted in the prior proceeding such that an analysis of whether those claims must be administratively exhausted would be "identical to the [issue] involved in [the] prior proceeding." *Bradberry*, 732 F.3d at 550. The Court finds that the claims are the same.

In Heston's 2018 complaint, she asserted that "AISD [failed] to hire, train, and supervise staff," placing A.H. in danger. *Heston*, 816 F. App'x at 981; (2018 Complaint, at 12–13). Heston asserts the same claims in the present complaint. (Compl., Dkt. 1, at 11). Through the vehicle of § 1983, Heston also asserted Fourth and Fourteenth Amendment claims in her 2018 complaint, asserting that the "acts and omissions" of Hardison violated A.H.'s Fourth Amendment rights, (2018 Complaint, at 11–12), the exact same claim Heston asserts here, (Compl., Dkt. 1, at 12) ("The acts and omissions of Defendant Hardison" injured A.H. and violated his Fourth Amendment rights). Regarding the Fourteenth Amendment, Heston's 2018 complaint alleged AISD violated the Equal Protection Clause of the Fourteenth Amendment by failing to keep A.H. safe as compared to his non-disabled peers. (2018 Complaint, at 12). So too in the present complaint. (Compl., Dkt. 1, at 12).

Heston's present § 504 claims fare no better. In her 2018 complaint, Heston asserted AISD "failed to keep A.H. safe from harm, and failed to provide him an environment that was not hostile." (2018 Complaint, at 11). Heston asserts the same "failure to keep safe" claim in the present complaint. (Compl., Dkt. 13). Heston argues that a "failure to keep safe" claim does not require administrative exhaustion, and therefore the Court is free to consider this claim. (Dkt. 11, at 7–8) (citing *Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 992 (5th Cir. 2014)). However, Heston made this same argument regarding AISD's failure to provide a safe environment in the 2018 case. (2018 Order, at 10) ("A.H. responds that the gravamen of his complaint concerns 'getting abused by a staff member,' and '[t]here's nothing educational about that.'"). The Court disagreed then and found that despite Heston's packaging of the claim as a "failure to keep safe claim," the gravamen of the claim concerned the denial of a FAPE.[3] *Id.*

Finally, Heston's present ADA claims are virtually identical to those addressed by the Court in 2018. In Heston's 2018 complaint, she alleged AISD "failed and refused to reasonably accommodate and modify its programs and services, so as to provide [A.H.] educational services to the same extent as his non-disabled peers." (2018 Complaint, at 11). Heston asserts the same claim here, alleging that AISD failed to accommodate A.H. with staff who were properly trained, correctly supervised, and who had the necessary background to serve him. (Compl., Dkt. 1, at 14). While Heston asserts "this District Court in *Heston I* or the Fifth Circuit [never] reached the merits of this type of claim," (Dkt. 10, at 8), this Court did indeed reach the merits of this claim and found it to be a FAPE-based claim:

---

[3] "It is irrelevant that A.H. does not refer to a FAPE or his IEP in his complaint, or that he casts his claims in terms of safety; the Court must look past the use of "particular labels and terms" . . . What matters is that the denial of a safe environment is in this case the denial of a FAPE, since the safety risk implicates the adequacy of A.H.'s IEP. Tellingly, A.H. himself told the SEHO that the denial of a safe environment constituted the denial of a FAPE . . . A.H.'s prior pursuit of a denial-of-safety claim under the IDEA is "strong evidence" that the substance of his Section 504 and ADA claims concern the denial of a FAPE." (2018 Order, at 11).

> To accommodate A.H.'s disabilities, AISD provides him with special education services. A.H. alleges that one component of his special education services is the hiring of "qualified staff . . . to serve [his] unique and individualized needs." The Hestons asked that his IEP include a 1:1 aide. AISD responded by placing Hardison with A.H. Unhappy with Hardison, the Hestons later made multiple requests for accommodation for an aide "with adequate training to accommodate A.H.'s unique needs." After the alleged assault, "A.H. became afraid to attend school" . . . .
>
> The gravamen of these allegations is the denial of a FAPE. A.H. received an aide as part of his IEP, which AISD developed pursuant to the IDEA. A.H.'s complaints about the deficiency of the aide provided through his IEP are therefore complaints about the adequacy of his IEP. Because a child's IEP is the "vehicle or means of providing a FAPE," a complaint about the adequacy of a child's IEP is a complaint about the denial of a FAPE.

(2018 Order, at 10–11) (internal citations omitted). The Fifth Circuit agreed:

> [T]he Hestons' complaint alleges Hardison was inadequately trained and supervised, charging that "Jennifer Hardison had never been correctly trained as to how to accommodate A.H.'s disabling conditions" nor was "correctly supervised by other staff as to how to accommodate A.H.'s disabling conditions." These all relate to Hardison's ability to function as a suitable educational aide for a mentally handicapped student. As the complaint puts it, A.H. suffers from "[a] deprivation of *educational* opportunities in the past and future."

*Heston*, 816 F. App'x at 981. The Court therefore finds that it has already addressed Heston's "failure to accommodate claim" and found that it was related to the denial of a FAPE, which requires the exhaustion of administrative remedies.

Heston vehemently disagrees with this conclusion, arguing that it results in "students with disabilities receiving Special Education services under the IDEA who are injured at school [to be placed in] a worse position than non-disabled students, or even students with disabilities who do not require services pursuant to the IDEA." (Dkt. 12, at 1–2). Heston further asserts that "Congress promulgated the IDEA to protect our most vulnerable children. Surely they could never have intended for the administrative exhaustion requirement under the IDEA to create a bar to injuries ALL other public school students may remedy." (*Id.* at 2). The Court understands and is sympathetic to this concern. In response, the Court points out that this is why the Court undertook a lengthy *Fry* analysis in the 2018 case—precisely to ensure that A.H. was not barred from seeking remedies on

9

claims that were unrelated to his IDEA claims. As the Court stated then: "A.H.'s complaint does not 'seek relief for simple discrimination' untethered to AISD's FAPE obligation; he complains of the adequacy of the 'individually tailored educational services' provided to him under the IDEA." (2018 Order, at 11) (citing *Fry*, 137 S. Ct. at 756).

Having found that Heston asserts claims in the present complaint that are virtually identical to those in the 2018 complaint, the Court turns back to the issue preclusion analysis and finds that the issue Heston and AISD dispute in the present case is the same as the issue in the 2018 case: whether Heston's claims require exhaustion of administrative remedies. (*See* Dkt. 5, at 5–7; Dkt. 10, at 8–20). The Court likewise finds that this issue was actually litigated in the prior proceeding and that the determination of this issue was necessary to the decision. *See Bradberry*, 732 F.3d at 550. Indeed, this Court's 2018 order and the Fifth Circuit's affirmance of that order turned on whether Heston's claims required administrative exhaustion. (*See* 2018 Order, at 7–12); *Heston*, 816 F. App'x at 979 ("The district court dismissed Plaintiffs' claims under the Americans with Disabilities Act, § 504 of the Rehabilitation Act, and 42 U.S.C. § 1983 for failure to exhaust administrative remedies. We affirm."). For these reasons, the Court finds that Heston's present complaint is subject to issue preclusion and the Court may not relitigate her claims now.[4]

---

[4] In an advisory to the Court following the conclusion of the parties' briefing on the motion to dismiss, Heston asserted that a new order out of the Northern District of Texas provided support for her arguments. (*See* Dkt. 23). In the case, *T.B. v. Northwest Independent School District*, Magistrate Judge Hal R. Ray, Jr. found that T.B., a student with a disability, was not barred from claiming disability-based discrimination under the ADA even after he had been denied a FAPE. No. 4:21-CV-729-BP (N.D. Tex. Jan. 25, 2022), ECF No. 24. However, *T.B.* is distinguishable from the present case because Judge Ray conducted a *Fry* analysis and determined that T.B.'s ADA claims *did not* concern denial of a FAPE, and that there was no problem with issue preclusion because the Court had not previously litigated the ADA claim. *Id.* at 10, 20. In contrast, here, this Court did litigate Heston's ADA claims in 2018 by conducting a full *Fry* analysis and determining that Heston's ADA claims concerned the denial of a FAPE. (2018 Order, at 10–11). Thus, unlike the Court in *T.B.*, this Court is barred by collateral estoppel from relitigating this very same issue here.

      2.    Whether Heston has exhausted administrative remedies

The only alternative to the Court's conclusion that it may not address Heston's present claims would be a finding that Heston did indeed exhaust her administrative remedies following the Fifth Circuit's affirmance in *Heston*. However, the Court finds that she did not. Heston asserts in her present complaint that—following the Fifth Circuit's order in *Heston*—she returned to the TEA to seek a final determination on her claims. (Compl., Dkt. 1, at 10). She further avers that the hearing officer determined "her remaining claims left for exhaustion were outside the one-year statute of limitations period set forth in Texas for claims related to the IDEA.[5] (*Id.*). She states "[n]ow having gone through the exhaustion process, Plaintiffs file the remaining claims expressed herein." (*Id.*). However, in her response to AISD's motion to dismiss, Heston states that "A.H. agrees he has failed to exhaust any FAPE based claims whether under the IDEA or Section 504." (Dkt. 10, at 7). Despite this discrepancy, the Court finds it necessary to briefly address whether Heston has indeed completed the process of administrative exhaustion.

Exhaustion of administrative remedies under the IDEA requires that there be findings and a decision on the issue of whether the student has been denied a FAPE. *Reyes v. Manor Indep. Sch. Dist.*, 850 F.3d 251, 256 (5th Cir. 2017). Texas district courts have found that a dismissal of claims under the IDEA based on the claims being brought outside of the statute of limitations does not qualify as an exhaustion of administrative remedies. *See, e.g.*, *Marc V. v. N. E. Indep. Sch. Dist.*, 455 F. Supp. 2d 577, 591 (W.D. Tex. 2006), *aff'd Marc V ex rel. Eugene V v. N. E. Indep. Sch. Dist.*, 242 F. App'x 271 (5th Cir. 2007); *Washington ex rel. J.W. v. Katy Indep. Sch. Dist.*, 390 F. Supp. 3d 822, 837 (S.D. Tex. 2019), rev'd on other grounds *J. W. v. Paley*, 860 F. App'x 926 (5th Cir. 2021). The Court agrees and

---

[5] AISD asserts that the TEA's dismissal was "based on claim preclusion resulting from the waiver and release of claims in December 2016," (Dkt. 5, at 3), but as the Court is required to accept all well-pleaded facts as true, it will rely on Heston's version of the events. *See in re Katrina Canal Breaches Litig.*, 495 F.3d at 205.

finds that the dismissal of Heston's IDEA claims due to the statute of limitations does not satisfy the requirement that she exhaust her administrative remedies.

## VI. CONCLUSION

For these reasons, **IT IS ORDERED** that AISD's Motion to Dismiss pursuant to Rule 12(b)(1), (Dkt. 5), is **DENIED.**

**IT IS FURTHER ORDERED** that AISD's Motion to Dismiss pursuant to Rule 12(b)(6), (Dkt. 5), is **GRANTED.**

**SIGNED** on March 30, 2022.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE